**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

|  |  |  |
|---|---|---|
| FREDERIC S. SHAFFER III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:11-CV-239 |
| v. | : | |
| | : | |
| DANA L. KAPLAN and DANIEL N. | : | |
| KAPLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## Opinion and Order

Plaintiff Frederic Shaffer III brings this civil action against Co-Defendants Dana and Daniel Kaplan regarding the alleged mishandling of the estate of Jean W. Morgan.  Shaffer has brought claims for breach of fiduciary duty, conversion, unjust enrichment, and professional malpractice; he seeks injunctive relief and damages.  Currently before the Court are the Co-Defendants' two motions for summary judgment, Shaffer's motion for partial summary judgment, Shaffer's motion to strike, and Dana Kaplan's motion for leave to take *de bene esse* deposition, or in the alternative, to extend the discovery schedule/order.  The Court hereby **denies** Frederic Shaffer's Motion to Strike, ECF No. 108, and for Partial Summary Judgment, ECF No. 104; **grants** Dana Kaplan's Motion for Summary Judgment, ECF No. 102; and **grants** Daniel Kaplan's Motion for Summary

Judgment, ECF No. 105, thereby dismissing the case.  Dana Kaplan's motion for leave to take *de bene esse* deposition, or in the alternative, to extend the discovery schedule/order, ECF No. 113, is **denied** as moot.

BACKGROUND

This suit concerns the estate of Jean W. Morgan, now deceased.  Plaintiff Frederic Shaffer and Defendant Dana Kaplan ("Dana") are half siblings and the only children of Mrs. Morgan, who passed away in March 2011.  Mrs. Morgan maintained her primary residence in Florida, but toward the end of her life, Mrs. Morgan spent her summers living with the Kaplans at their home in Burlington, Vermont.

It is undisputed that Mrs. Morgan had a close relationship with her daughter, and spent a significant amount of time with her.  Perhaps reflective of this fact, Mrs. Morgan designated Dana as her fiduciary on numerous occasions.  Mrs. Morgan gave Dana a power of attorney under New York law in 1994 and again in 2000 gave her a power of attorney under New York ("NYPOA"), Florida, and Vermont law.  She also gave Dana two health care proxies: one in 1994 under New York law, and one in 2000 under Vermont law.

Shaffer's relationship with Mrs. Morgan contrasted sharply with his sister's.  It is undisputed that Shaffer had a poor relationship with his mother, and did not speak to her for at

least the last seven years of her life, though the parties
dispute the cause of this estrangement.

Daniel Kaplan ("Daniel") is Dana's now-ex-husband.  He is a
Certified Financial Planner for Ameriprise Financial.  At all
times relevant to this proceeding, Daniel managed Mrs. Morgan's
assets and accounts as her financial planner.  According to
Defendants, Daniel never executed transactions without specific
direction from Mrs. Morgan, and Dana was not involved in any of
Mrs. Morgan's financial decisions.

**I. Will of Jean W. Morgan**

Mrs. Morgan originally executed a will in 1994 that split
her estate equally between Dana and Shaffer.  In August 2005,
Mrs. Morgan executed a new Will and Testament ("Will") while
residing in Florida.  The Will specifically bequeaths a watch
and an antique bed to Shaffer and bequeaths the balance of Mrs.
Morgan's tangible personal property to Dana.  It then dictates
that the "residue and remainder" of her property is to be given
to the "Trustees of 'The Jean W. Morgan Trust ("Trust"), dated
August 22, 2005,' to be held and administered pursuant to the
terms thereof."  In other words, the 2005 Will provided that all
residual property owned by Mrs. Morgan's Estate would pass to
the Trust at the time of her death.  The Will appoints Dana the
Executrix of the Will.

That same year, Mrs. Morgan created the aforementioned Jean
W. Morgan Trust.  The Trust names Mrs. Morgan as the Trustee and
is revocable until her death, when it becomes irrevocable.  Dana
is named as the Successor Trustee, to serve as Trustee in the
event of Mrs. Morgan's incapacitation or death.  The original
2005 Trust names Dana Kaplan as the sole Beneficiary of the
Trust, with all of the Trust Assets to be distributed to her
upon Mrs. Morgan's death.  According to Shaffer, Daniel attended
meetings with Mrs. Morgan and her attorney, Bert Cicchetti, to
help with her estate planning in 2005 when she established the
Will and Trust.

In February of 2006, Mrs. Morgan executed an amendment to
the Trust that changed the distribution of the Trust Property as
follows:

> Upon my death, the entire Trust Property, as it then
> exists, shall be distributed in the following manner:
> A. To my daughter, Dana, per stirpes, my personal
>    residence and all of the contents therein.
> B. The remaining Trust Property shall be distributed
>    equally to my children, Dana, per stirpes, and
>    Ricky, per stirpes. If either of my children
>    shall predecease me without issue surviving them,
>    their share shall be distributed to my surviving
>    child, per stirpes.

Second[1] Trust Amendment 2.1, ECF No. 1-5.  The Trust was not
amended after the 2006 revisions.  Thus, at the time of
Mrs. Morgan's death in 2011, the Will and Trust directed

---

[1] The Trust was also amended once previously.  The first trust
amendment has no bearing on this proceeding.

that Mrs. Morgan's residual estate was to "pour over" into
the Trust and be distributed equally between her two
children.

## II.    Investment Accounts

At the time of her death, Mrs. Morgan owned several
investment accounts at Ameriprise Financial.  Mrs. Morgan first
established these accounts in 1997 with Daniel's help as her
financial advisor.  The quantity, ownership, and beneficiaries
of these accounts changed several times between 1997 and 2011.
Initially, all of the accounts named Mrs. Morgan as the sole
owner and Dana and Shaffer as joint beneficiaries.  Shortly
after Mrs. Morgan revised her Will and created the Trust in 2005
(when the Trust still named Dana as the sole inheritor), Mrs.
Morgan changed the beneficiary on all but one of the existing
Ameriprise accounts from Dana and Schaffer to "Trust."  She also
changed the named owner on two of the Accounts from herself to
the Trust.  Thus by the end of 2005, there were two Ameriprise
accounts held in the Trust's name, four in Mrs. Morgan's name,
and all six of the accounts listed the Trust as the sole
beneficiary.

Midway through 2009, Mrs. Morgan took several actions that
ultimately led to a complete defunding of the Trust.  In August
2009, Mrs. Morgan closed one of the Ameriprise accounts owned by
the Trust.  In October 2009, she transferred ownership of the

remaining Trust-owned Ameriprise account back to her own name.
She also emptied two of the accounts in her name.  She then
changed the transfer/payable on death ("TOD") beneficiary on the
remaining three accounts from the Trust to Dana.  Mrs. Morgan
also opened two new Ameriprise accounts, one in September 2009
and one in September 2010, both listing Dana as the sole TOD
beneficiary.  Thus, by the end of 2010, Mrs. Morgan owned five
Ameriprise Accounts that all listed Dana as the sole TOD
beneficiary.  The Trust was no longer listed as an owner or
beneficiary on any of the accounts.

The parties dispute the impetus behind these changes.
Daniel and Dana contend that Mrs. Morgan wished to disinherit
Plaintiff, and sought out[2] advice from her attorney, Bert
Cicchetti, on how this could be accomplished.  According to
Cicchetti's deposition, one of the options that he discussed
with Mrs. Morgan was to defund the Trust, rather than making
changes to the Trust itself.  Daniel states that Mrs. Morgan
preferred this option because it was simple and free, whereas

---

[2] The parties dispute who reached out to Cicchetti on this issue.
While Cicchetti himself states in deposition that Mrs. Morgan called
him to discuss the changes, Shaffer challenges Cicchetti's testimony
by noting that in an earlier, unsigned affidavit, Cicchetti indicated
that Dana was the initial caller.  Cicchetti has explained this
inconsistency as a lapse in memory.  It is undisputed, however, that
all of Cicchetti's sworn testimony (and the only that would be
admissible in evidence) indicates that Mrs. Morgan was the person who
made the call.  Furthermore, regardless of who made the call, there is
no allegation that anyone but Mrs. Morgan ultimately made the changes
to her account at issue in this proceeding, and the facts uniformly
indicate that she was in sound mind when doing so.

changing the Trust would incur legal fees.  Shaffer contends that these account changes were suggested by Daniel Kaplan as a way to disinherit Shaffer due to his personal dislike of Plaintiff.  However, it is undisputed that following the conversation with Attorney Cicchetti, Mrs. Morgan herself took the actions that resulted in defunding the trust.  The TOD beneficiary forms are all signed by Mrs. Morgan and Shaffer makes no allegation that Mrs. Morgan was under duress or incompetent when she made these changes in 2009.

In addition to the accounts described above, Mrs. Morgan and Dana opened a joint account in September 2009, referred to as the "Binky" account.  Dana concedes that she signed her mother's name to the application.  This account was funded with an initial deposit of $10,000 that came from another joint account owned by Dana and Mrs. Morgan.  After the creation of the account, Dana made another deposit of $6,000 from her own bank account, and Mrs. Morgan personally deposited an additional $325.  Mrs. Morgan received statements at her home in Florida regarding this account until her death.

### III.   Jane V. Wallace Inheritance

In 2010, Mrs. Morgan received a significant inheritance from her step-mother, Jane V. Wallace.  Mrs. Wallace died in May 2010, leaving significant assets to Mrs. Morgan — namely, stock in the Crab Orchard Land and Coal Company ("Crab Orchard stock")

7

and funds in an escrow account.  At the time of her death, Mrs. Wallace owned 482 shares of Crab Orchard stock, all of which was devised to Mrs. Morgan.  Mrs. Morgan also inherited $135,197 held in an escrow account.

Around the time of Mrs. Wallace's death, Dana went to Ohio to help facilitate Mrs. Morgan's distributions from Mrs. Wallace's estate.  Dana states that while her mother was mentally competent, she was physically unable to handle the requirements of the trip.  A lifelong smoker, Mrs. Morgan was on an oxygen tank at this time.  Dana explains that she went out to Cincinnati "with [her] mother's blessings and to be her eyes and ears."  While in Cincinnati, Dana provided her NYPOA to James Chalfie, Esq., the attorney representing Mrs. Wallace's Estate, to confirm that she was authorized to direct the manner of distributions to Mrs. Morgan.

According to Shaffer, Dana represented to Chalfie that Mrs. Morgan was ill and that the distributions should be hastened. However, the only support Shaffer provides for this assertion is Dana's deposition.  In her deposition, Dana Kaplan makes it very clear that Mrs. Morgan was *physically* unable to travel to Cincinnati, but makes no representation as to mental incapacity. Instead, all of the evidence on the record indicates that Mrs. Morgan remained mentally sound until her death in 2011.  This is confirmed by a letter from Mrs. Morgan's physician, James

O'Brien, which states that, despite her lung disease and
emphysema, Mrs. Morgan was in excellent mental health while in
his care, that she was "fully competent and fully capable of
managing her own personal and financial affairs," and "[a]t no
time was there any indication that anyone but herself was in
charge!"

The Crab Orchard stock proceeds, in the amount of $390,280,
were delivered to Mrs. Morgan by check dated July 14, 2010.
Mrs. Morgan endorsed the Crab Orchard stock proceeds check "for
deposit only" to AMER Enterprise Investment Services. At Mrs.
Morgan's direction, Daniel deposited $240,280 into an Ameriprise
account in Dana Kaplan's name, and split the remaining $150,000
into two of Mrs. Morgan's brokerage accounts. Mrs. Morgan also
received the proceeds from the escrow account owned by Mrs.
Wallace valued at $135,197. The escrow funds ultimately were
provided to Mrs. Morgan by check and deposited into individual
brokerage accounts owned solely by Mrs. Morgan.

**IV.   Legal Proceedings**

Mrs. Morgan passed away in March 2011. At the time of her
death, all of her assets were in accounts naming Dana as the TOD
beneficiary and therefore passed immediately to Dana. As a
result, there was no residual estate remaining to "pour over"
into the Trust. The only item that remained in the Trust was
Mrs. Morgan's personal residence in Florida, which was devised

solely to Dana by the express terms of the Trust.  Shaffer
therefore received nothing beyond the watch and bed devised to
him in the 2005 Will.  Plaintiff Shaffer filed a Complaint
against Dana Kaplan in October 2011, alleging that the
Ameriprise assets rightfully belong in the Trust, and that he is
entitled to half of these assets.  The Complaint has been twice
amended to add Daniel Kaplan as a Defendant and to add new
claims.  The Second Amended Complaint ("SAC") includes counts
against Dana Kaplan seeking an Accounting of the Inheritance
Assets, and alleging Breach of Fiduciary Duties as Attorney in
Fact, Breach of Fiduciary Duties as Personal Representative/
Executrix of Estate, Breach of Trust and Fiduciary Duties as
Trustee of Trust, Conversion, and Unjust Enrichment.  The SAC
also brings claims against Daniel Kaplan alleging Conversion,
Unjust Enrichment, Aiding and Abetting a Breach of Fiduciary
Duty, Breach of Fiduciary Duty, and Professional Malpractice.

## DISCUSSION

### I.  Legal Standard

The parties have filed cross motions for summary judgment
under Rule 56.  Summary judgment is appropriate where the
"movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed.R.Civ.P. 56(a).  On a motion for summary judgment,
the moving party bears the burden of showing that it is entitled

to summary judgment.  *Huminski v. Corsones*, 386 F.3d 116, 132
(2d Cir. 2004).  Thus, the Court examines "the evidence in the
light most favorable to, and draw[s] all inferences in favor of,
the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d
Cir. 2003) (citation omitted).  "The non-moving party may not
rely on mere conclusory allegations nor speculation, but instead
must offer some hard evidence showing that its version of the
events is not wholly fanciful." *D'Amico v. City of New* York,
132 F.3d 145, 149 (2d Cir. 1998), *cert denied* 524 U.S. 911
(1998).  A failure to establish an essential element on which
the non-moving party would have the burden of proof at trial
mandates summary judgment, because there can be no genuine issue
of material fact where there is a "complete failure of proof
concerning an essential element of the nonmoving party's case."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where there are "cross-motions for summary judgment, 'each
party's motion must be examined on its own merits, and in each
case all reasonable inferences must be drawn against the party
whose motion is under consideration.'" *Lumbermens Mut. Cas. Co.
v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir.
2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115,
121 (2d Cir. 2001)).

**II.  Plaintiff's Motion to Strike**

Before reaching the dispositive motions, the Court will address Shaffer's motion to strike. Shaffer has moved to strike certain statements in Dana and Daniel's statements of undisputed facts, alleging that they are not supported by admissible evidence because they cite to their own affidavits or depositions. Shaffer contends that this testimony is inadmissible in light of Vermont's Dead Man's Statute, which proscribes a party from testifying in his or her own favor where the other party to the contract or cause of action is deceased or insane. *See* Vt. Stat. Ann. tit. 12, § 1602. Shaffer argues that Dana and Daniel are precluded by the Dead Man's Statute from testifying in their own favor regarding the Trust and their financial transactions with the deceased Mrs. Morgan.

For the statute to apply, two factors must be satisfied: "(1) the witness must be the surviving party to the contract or cause of action in issue and on trial and (2) the testimony must be in his own favor." *Proulx v. Parrow*, 56 A.2d 623, 626 (Vt. 1948); *see also Estate of Smith v. United States*, 979 F. Supp. 279, 284-85 (D. Vt. 1997). Contrary to Shaffer's assertion, the first factor is not met here because there is no contract or cause of action with the decedent at issue in this case. While Shaffer argues that the Trust itself qualifies as the contract in issue, the evidence that he seeks to strike has *no* relation to the validity, construction, or administration of the Trust.

12

Furthermore, as neither Mrs. Morgan nor her Estate is a party to this action, it cannot be said that the witness is the surviving party to a cause of action adverse to the decedent.  Thus, the Dead Man's Statute does not apply to any of the statements Shaffer seeks to strike.

Even if the Statute *did* apply, however, the motion to strike still would not be granted because it is the improper method to challenge this evidence.  While Shaffer may object to Defendants' proffered facts offered in support of their motions for summary judgment, the Federal Rules of Civil Procedure have an *express* procedure for how to contest a purported fact as unsupported by admissible evidence.  *See* Fed. R. Civ. P. 56(c)(2) (a party may respond to a Rule 56 statement of undisputed facts by "object[ing] that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").  Shaffer has already used this procedure in responding to Daniel and Dana's motions for summary judgment, and the Court will not rely on any disputed or improperly supported facts in ruling on the motions for summary judgment.  The motion to strike is thus not only unsupported by law, it is also superfluous and is therefore denied.

### III. Plaintiff's Motion for Partial Summary Judgment

Plaintiff Shaffer has filed a motion for partial summary judgment with respect to Count II (breach of fiduciary duty

under power of attorney against Dana Kaplan) and Count VII
(aiding and abetting breach of fiduciary duty against Daniel
Kaplan).  In addressing Shaffer's motion, the Court will
consider all evidence in the light most favorable to Defendants
to determine whether Shaffer is entitled to judgment as a matter
of law.

### A. Count II — Breach of Fiduciary Duty (Dana Kaplan)

Shaffer first seeks summary judgment as to his claim
against Dana Kaplan for breach of fiduciary duty under a power
of attorney.  His motion is premised solely on the fact that
Dana received gifts "amounting to Mrs. Morgan's entire estate"
from Mrs. Morgan while holding a power of attorney.  In his
view, the law dictates that *any* gift or transfer from a
principal to one holding a power of attorney is presumptively
invalid, and that this invalidity can only be overcome by clear
and convincing evidence that the principal waived the conflict.
His motion thus rests on the theory that all of the money Dana
received from Mrs. Morgan constitutes an invalid gift because
Dana cannot present evidence of such a waiver.

It is undisputed that Dana held the power of attorney for
Mrs. Morgan and that this created a fiduciary relationship.  *See*
N.Y. Gen. Oblig. Law § 5-1505 (discussing fiduciary duties of
agent holding power of attorney).  It is also undisputed that
Defendants cannot provide any evidence of a conflict waiver.

14

However, the parties disagree about whether the law requires
such a waiver.  Shaffer primarily relies upon a case from 1928
in which the Second Circuit states that "the cases establish
that certain relationships in and of themselves give rise to a
presumption of invalidity, [such] as . . . a gift to one holding
a power of attorney[.]"  *Thaw v. Thaw*, 27 F.2d 729, 733 (2d Cir.
1928).  From this one line, Shaffer extrapolates that because
Dana held a power of attorney for Mrs. Morgan, *any* gift she
received from her would "give rise to a presumption of
invalidity."  However, a review of the cases upon which *Thaw*
relies makes clear that it refers specifically to *self-dealing
transactions* by one holding the power of attorney, not all
gifts.  *See id.; Appeal of Darlington*, 147 Pa. 624, 635 (1892);
*Dunn v. Dunn*, 42 N.J. Eq. 431 (1886)).[3]

   The facts of *Thaw* itself do not dictate a different
conclusion.  While *Thaw* does not concern a power of attorney, it

_____

[3] In *Darlington*, the court held that "in the law of principal and agent
nothing is better settled than that the agent is disqualified from
dealing with the property of the principal for his own advantage,"
explaining that the agent cannot buy the principal's property, or draw
up papers for his own benefit, and that in such cases, there is a
presumption against the validity of such acts.  *Darlington*, 147 Pa. at
635.  Similarly, in *Dunn*, the court explained that when a sale is made
by the principal to the agent, such sales are looked at with suspicion
and the burden is on the agent to show that the transaction was
conducted in good faith.  *Dunn*, 42 N.J. Eq. at 431.  Thus, "the cases"
cited in *Thaw* demonstrate that the presumption of invalidity does not
apply to *all* gifts between those in a fiduciary relationship, but
rather to self-dealing transactions and those where the agent uses the
power of attorney to make self-interested transfers of the principal's
property.

discusses when gifts between parties to a confidential
relationship should be found invalid.  In *Thaw*, the Second
Circuit found that a sizeable gift from an ailing grandmother to
her grandson was invalid where the grandson took advantage of
their confidential relationship.  *Thaw* is easily distinguishable
from this case, however, because the decision was clearly
grounded in concerns about undue influence and
unconscionability.  The court found that due to her ailing
physical and mental health, the grandmother was "incapable of
grasping fully and clearly the effect and consequences to her of
making so large and important a gift," thereby rendering the
gift invalid.  *Thaw*, 27 F.2d at 732.  Thus, *Thaw* does not stand
for the broad proposition that a gift is presumptively invalid
even without evidence of such influence.

     At best, the cases Shaffer cites establish that had Dana
transacted in her own best interest while acting as Mrs.
Morgan's attorney-in-fact, used the power of attorney to make
transfers to herself, or exerted some undue influence over Mrs.
Morgan, these transactions would be presumptively invalid and
require evidence of a waiver.  This is consistent with the New
York statute governing the power of attorney, which forbids
agents from making gifts of the principal's property to herself
or others and from using the power of attorney to transfer the
principal's property in any manner for the agent's own benefit.

N.Y. Gen. Oblig. L. § 5-1505.  Thus, Shaffer will only be entitled to summary judgment under Count II if the facts demonstrate that Dana transacted in her own interest or used Mrs. Morgan's property for her own benefit.

Shaffer does not allege in his motion for summary judgment that Dana exerted undue influence over Mrs. Morgan.  Even if he did, viewing the facts most favorably to Dana, the Court would infer that no such influence existed, as the evidence indicates that Mrs. Morgan was fully competent throughout the transactions in question.  Thus, a breach of fiduciary duty cannot be established on the grounds of undue influence.

There is also no evidence on the record to indicate that Dana made self-interested transfers of Mrs. Morgan's assets. Shaffer alleges that Dana received gifts from Mrs. Morgan that implicated a conflict of interest that she was required to disclose.  However, there is no evidence on the record that Dana played any role in transferring money to herself.  Shaffer has not alleged that Dana played a role in the changes to the Trust or in the $240,280 that Mrs. Morgan gave her from the Crab Orchard stock, nor does he provide any evidence that she was involved in those transactions.  While Dana acknowledges that she helped Mrs. Morgan access the monies she inherited from Mrs. Wallace, it is undisputed that Mrs. Morgan received her distribution of the Crab Orchard stock in a check *made out to*

17

*Mrs. Morgan* dated July 14, 2010, and there is no evidence or indication that Dana played any role in the future disbursement of these funds.  As a result, Shaffer cannot establish as a matter of law that the gifts to Dana were presumptively invalid. Summary judgment is therefore denied as to the breach of fiduciary duty claim under Count II.

### B. Count VII — Aiding and Abetting Breach of Fiduciary Duty (Daniel Kaplan)

Shaffer also seeks summary judgment as to his aiding and abetting a breach of fiduciary duty claim against Daniel Kaplan. This claim is based on the theory that Daniel helped Dana breach her fiduciary duties to Mrs. Morgan.  Under Vermont law, a person may be liable for aiding and abetting a breach of another's fiduciary duties.  *See Montgomery v. Devoid*, 2006 VT 127 ¶ 33, 915 A.2d 270, 281.  To sustain such a claim, the plaintiff must show "(1) a breach by the fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that the plaintiff suffered damage as a result of the breach." *Cooper v. Cooper*, 783 A.2d 430, 443 (Vt. 2001).

Shaffer's claim cannot be sustained under *Cooper*.  First, as discussed above, Shaffer cannot demonstrate that Dana is liable for breach of fiduciary duty at the summary judgment stage.  Because no breach of fiduciary duty has been

18

established, Daniel necessarily cannot be liable as Dana's aider or abettor.  Furthermore, even if a breach had been established on Dana's part, viewing the facts in the light most favorable to Daniel, Shaffer still fails to meet the second *Cooper* element. The evidence indicates that all of Daniel's actions were directed specifically by Mrs. Morgan and authorized by her. Mrs. Morgan herself executed all of the TOD Beneficiary forms and the checks regarding her inheritance from Mrs. Wallace. Thus, there is no indication that Daniel knowingly induced or participated in any breach and Shaffer's motion for partial summary judgment as to Count VII is also denied.

## IV.  Dana Kaplan's Motion for Summary Judgment

Dana Kaplan moves for summary judgment dismissing all of Plaintiff's claims against her.  In assessing Dana's motion, the Court will construe all facts and make all reasonable inferences in favor of Shaffer.

### A. Count I — Accounting of Estate

In Count I of the SAC, Shaffer requests an accounting of Mrs. Morgan's estate on the grounds that Dana had failed to communicate information regarding the administration of the trust and estate.  The Court already granted this relief in an Order issued January 25, 2013, when it held that Plaintiff was entitled to a full accounting of all relevant transfers, the Jean W. Morgan Trust assets, and an inventory of the Estate of

Jean W. Morgan.  Order Granting Plaintiff's Motion to Enforce
Order Regarding Accounting, ECF No. 68.  Pursuant to this order,
Dana filed a complete accounting on February 21, 2013, to which
Shaffer has not objected.  Because the requested accounting has
been provided, this claim is moot.  *See Steffel v. Thompson,* 415
U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an
actual controversy must be extant at all stages of review, not
merely at the time the complaint is filed.").  Count I is
therefore dismissed.

### B. Count II — Breach of Fiduciary Duties as Attorney in Fact under NYPOA

Count II alleges that Dana breached her fiduciary duties
pursuant to her NYPOA by receiving gifts from Mrs. Morgan.  The
settled law, which Dana does not dispute, is that an agent
breaches her fiduciary duty when she uses the principal's
property for her own purposes.  As described in the discussion
regarding Shaffer's motion for partial summary judgment, the
case law and statutes make clear that self-interested transfers
of the principal's assets made by the agent are presumptively
unfair and in those cases that it falls to the agent to show
that the transactions were not a result of undue influence.  *See*
N.Y. Gen. Oblig. L. § 5-1505 (New York law forbidding one
holding NYPOA from making gifts of principal's property to self
or others and from using the NYPOA to transfer principal's

20

property in any manner for agent's own benefit); *Moon v. Darrow*, 912 N.Y.S. 2d 850, 853 (2011)(agent breaches her fiduciary duty when she uses the principal's property for her own purposes).[4]

Thus, Dana could be liable for breach of fiduciary duties if the evidence suggests that she used her NYPOA to engage in self-dealing transactions with Mrs. Morgan's assets. Shaffer bases his breach of fiduciary duty claim against Dana on several events: (1) the changes to the Ameriprise accounts that occurred in 2009; (2) the distribution of the Crab Orchard stock proceeds; (3) the disbursement of Mrs. Wallace's escrow account; and (4) the formation of the so-called "Binky" account. However, even viewing the facts in the light most favorable to Shaffer, there is no evidence on the record to indicate that any of these incidents constituted self-dealing transactions amounting to a breach of Dana's fiduciary duties to her mother.

First, there is no indication that Dana was involved *at all* with the 2009 changes to the Ameriprise accounts, much less in a nefarious capacity. Shaffer does not provide any evidence that Dana played any role in these transfers, and both Dana and

---

[4] In opposition, Shaffer again contends that Dana is prohibited from receiving *any* gifts from Mrs. Morgan without a conflict waiver, *see Thaw*, 27 F.2d at 733, and that she is prohibited from gifting herself Mrs. Morgan's assets even without using the NYPOA, *see In re Estate of Elias*, 408 Ill. App. 3d 301, 319 (2011) (finding that transaction between fiduciary parties that benefits agent is presumed to be fraudulent). However, as the Court has already explained in its discussion regarding Shaffer's motion for partial summary judgment, the presumption of invalidity does not apply to *any* gift to one in a fiduciary relationship, but instead to self-interested transactions.

Daniel consistently state in deposition that Dana played no role
in any of Mrs. Morgan's financial decisions.  While the facts
must be construed liberally in Shaffer's favor at the summary
judgment stage, Shaffer must still "offer *some* hard evidence
showing that [his] version of the events is not wholly fanciful"
and may not "rely on mere conclusory allegations nor
speculation."  *D'Amico*, 132 F.3d at 149 (emphasis added).

There is also no evidence on the record that Dana exerted
any undue influence over Mrs. Morgan when she made the 2009
changes to the Ameriprise accounts.  Shaffer essentially argues
that because (in his view) the changes to the accounts were
inconsistent with Mrs. Morgan's intent as indicated in her Will
and Trust, this alone is enough to indicate that the transfers
wrongfully constituted a failure to "act upon Mrs. Morgan's best
interest and avoid conflicts of interest."  Pl.'s Disputed Facts
¶ 4.  Not only is this very thin evidence to support such an
inference, but these transfers were *not* expressly contrary to
Mrs. Morgan's Will and Trust.  Mrs. Morgan's Will grants to the
Trust all "residue and remainder of my property wheresoever
situate, which I may own or to which I may in any way be
entitled at the time of my death."  This language is not
inconsistent with Mrs. Morgan's decisions to eliminate her
residual estate by changing the beneficiaries on her accounts or
directing her assets elsewhere.

Thus, Shaffer cannot demonstrate that the 2009 changes were contrary to Mrs. Morgan's intent in her Will.  Indeed, as Defendants pointed out at oral argument, Mrs. Morgan changed her mind about the beneficiaries of her Ameriprise accounts and her Trust several times between 2004 and 2009, sometimes in Shaffer's favor, sometimes not.  While Shaffer unsurprisingly declines to challenge the validity of the earlier changes, there is no evidence to suggest that the 2009 changes are any less legitimate than the changes that occurred in 2006.

The record also does not indicate that any of Dana's transactions relating to Mrs. Wallace's estate amounted to self-dealing.  According to Shaffer, Dana used the NYPOA in relation to matters concerning a condo in Cincinnati, the escrow funds from Mrs. Wallace's estate, and the Crab Orchard stock.  While there is some dispute as to whether Dana invoked the NYPOA in some relation to the Crab Orchard stock, this does not demonstrate that Dana's receipt of the $240,280 in Crab Orchard proceeds constituted a self-dealing transaction.  The undisputed facts indicate that Mrs. Morgan ultimately received the Crab Orchard stock sale proceeds in a check made out directly to her. She then endorsed the check "for deposit only" to Ameriprise and only then proceeded to distribute the money among different Ameriprise accounts, including the $240,280 she gave to Dana.

Even if Dana did use the NYPOA to facilitate Mrs. Morgan's receipt of the Crab Orchard stock proceeds, there is no evidence to suggest that Dana facilitated the distribution of the stock proceeds to herself.  In his Facts, Shaffer states that "Daniel and Dana directed these proceeds to be directed into an Ameriprise account in Dana Kaplan's sole name."  Pl.'s Facts ¶ 20.  However, Shaffer's only citation for this fact is to Dana and Daniel's depositions, and both Kaplans state in their depositions that Dana was not involved in this transaction and that she did not learn of it until after it occurred.  There is no evidence on the record inconsistent with this position.

Shaffer also cannot demonstrate that the receipt of the escrow funds from Mrs. Wallace's estate constituted a self-dealing transaction.  While Dana did use her NYPOA to facilitate the transfer of these funds, even Shaffer concedes that all of the escrow funds "ultimately passed to Mrs. Morgan," not to Dana.  Pl.'s Facts ¶ 23.  Thus, even when construing the facts in the light most favorable to Shaffer, there is no evidence on the record indicating that Dana Kaplan transferred any of Mrs. Wallace's assets to herself.  While she may have aided her mother in accessing the escrow and Crab Orchard funds, it is undisputed that these assets were distributed directly to Mrs. Morgan herself, and not to Dana.  These do not amount to self-interested transactions constituting a breach of fiduciary duty.

24

Finally, the creation of the "Binky" account does not support Shaffer's breach of fiduciary duty claim. While Dana concedes that she signed her mother's name on the account application, this does not constitute unlawful self-dealing. The facts indicate that the Binky account was created using $10,000 from an account jointly owned by Mrs. Morgan and Dana. After the initial deposit, both Dana and Mrs. Morgan made additional deposits of their own money into the account. Thus, any suggestion that the creation of the account was somehow fraudulent is undone by Mrs. Morgan's later deposits, which amount to a ratification. In Vermont, when a party avails herself of an unauthorized act done by another in her name, this constitutes a ratification. *Lewis v. Addison County Trust Co.*, 104 Vt. 183, 186 (1932). Here, when Mrs. Morgan independently made deposits into the Binky Account, this ratified Dana's earlier actions in establishing the account. This ratification belies any claim that Dana breached her fiduciary duties to Mrs. Morgan by creating the Binky Account.

Thus, Shaffer fails to present evidence of self-dealing to support his breach of fiduciary duty claim. Even if there were facts on the record indicating that any of these transactions were somehow suspect, Shaffer's claim still fails because he cannot demonstrate that any of the transfers caused him harm, which is an essential element of any claim for breach of

fiduciary duty. *See Green Mt. Inv. Corp. v. Flaim*, 807 A.2d 461, 464 (Vt. 2002) (breach of fiduciary duty requires proof of damages). Even if the opening of the Binky account was somehow wrongful, the facts indicate that this account was opened using funds from an account joint-owned by Mrs. Morgan and Dana. If the Binky account had not been created, the funds would have remained in a jointly owned account that would have passed to Dana upon Mrs. Morgan's death. Thus, Shaffer cannot demonstrate that any of the Binky account money would have reached him if the account had not been created. Shaffer similarly cannot show that any of the Crab Orchard stock proceeds would have gone to him or to the Trust. Mrs. Morgan endorsed the Crab Orchard stock proceeds check for deposit to AMER Enterprise Investment Services after the Trust had been removed as a beneficiary on all of Mrs. Morgan's Ameriprise accounts. Thus, it is entirely speculative whether any of the $240,280 would have reached Shaffer or the Trust had the money not gone to Dana. As a result, Shaffer cannot demonstrate that he has been harmed by the challenged transactions, regardless of whether Dana played a role in them, and his claims necessarily fail.

Shaffer's sole evidence that any of this money would have gone to him is the express language of the Trust, which he argues demonstrates Mrs. Morgan's unambiguous intent that her estate be split equally between Dana and himself. However,

26

again, the express language of the Trust indicates that Mrs.

Morgan's *residual* estate is to be split between her two

children, not that the estate itself is to be split.  In fact,

there is no mention of Shaffer in the Will itself other than the

bequest of the watch and the bed.  Shaffer presents no other

evidence that Mrs. Morgan intended half of the Crab Orchard

stock or the escrow funds to go to him.

### C. Counts III and IV — Breach of Fiduciary Duties as Executrix of Estate of Jean W. Morgan and Breach of Fiduciary Duties as Trustee of Trust

Under Counts III and IV, Shaffer brings claims against Dana

for breaching her fiduciary duties as executrix of Mrs. Morgan's

estate, and as trustee of the Jean W. Morgan Trust.  Under Count

III, Shaffer claims that Dana breached her fiduciary duty by

"failing to settle and distribute the Estate of Jean W. Morgan

in accordance with the terms of the Will."  Under the terms of

the Will and Trust, Shaffer is to receive a bed and a pocket

watch and half of the residuary of Mrs. Morgan's estate.  The

remainder of Mrs. Morgan's personal property was to be given to

Dana.  At the time of Mrs. Morgan's death, all of her assets

named Dana Kaplan as a TOD Beneficiary at her death, so there

was no residual estate.  As a result, the only assets due to

Shaffer upon Mrs. Morgan's death were the watch and the bed, and

it is undisputed that Shaffer received these items.  While

Shaffer alleges that certain changes to the Ameriprise accounts

in 2009 and gifts in 2010 were unlawful, they far precede Dana's
role as executrix of the will after Mrs. Morgan's death in 2011.
Thus, all of Shaffer's allegations against Dana have no relation
to her activities as executrix of her mother's will, and Count
III is dismissed.[5]

Under Count IV, Shaffer contends that Dana breached her
duties as Trustee by failing to administer the Trust in the
interest of the beneficiaries.  However, it is undisputed that
the Trust was defunded while *Mrs. Morgan* was the Trustee of the
Trust.  By the time Dana was Trustee of the Trust, there was no
Trust Property to administer.  Thus, even construing the facts
in favor of Shaffer, he can sustain no claims against Dana for
breaching her duties as Trustee of the Trust.

**D. Count V — Conversion**

Under Count V, Shaffer argues that Dana and Daniel
appropriated and wrongfully exercised dominion and control over
Mrs. Morgan's funds and the Trust by placing them into an
account bearing Dana's name.

To establish a claim for conversion, Shaffer must
demonstrate that that Dana has "appropriated [his] property to
[her] own use and beneficial enjoyment, has exercised dominion

---

[5] At the summary judgment hearing, the parties made reference to a
dispute currently pending in Florida state court regarding the
proceeds from the sale of Mrs. Morgan's Florida residence (which was
expressly devised to Dana in the Trust).  As this issue has not been
briefed or presented before the Court, it will not be considered in
this action.

over it in exclusion and defiance of the [his] right, or has
withheld possession from [him] under a claim of title
inconsistent with [his] title." *P.F. Jurgs & Co. v. O'Brien*,
629 A.2d 325, 328 (Vt. 1993).  To bring a claim of conversion
under Vermont law, a plaintiff must show an immediate right to
possession. *Miller v. Merchants Bank*, 415 A.2d 196, 199 (Vt.
1980).  Construing the facts in the light most favorable to
Shaffer — even assuming that Mrs. Morgan's assets belonged in
the Trust — Plaintiff had no *immediate* right to the assets in
the Trust at the time of the alleged conversion.  Under its
terms, the Trust was revocable and Mrs. Morgan's residuary
estate only poured into the Trust at the time of Mrs. Morgan's
death.

Furthermore, Shaffer has no claim of conversion based on
the Crab Orchard stock, the Binky account, or the escrow funds,
as those assets were at no point even Trust assets, much less
possessed by Shaffer.  Thus, even construing the facts in
Shaffer's favor, he cannot make out a claim for conversion under
Vermont law against Dana Kaplan.

**E. Count VI — Unjust Enrichment**

Shaffer's final claim against Dana is for unjust enrichment
under the theory that Dana received a benefit that should have
been included in Mrs. Morgan's residual estate and therefore the
Trust.  Unjust enrichment is a claim based on quasi-contract

where "[t]he law implies a promise to pay when a party receives
a benefit and the retention of the benefit would be
inequitable." *In re Estate of Elliott*, 542 A.2d 282, 285 (Vt.
1988) (quoting *Cedric Electric, Inc. v. Shea*, 472 A.2d 757, 757
(Vt. 1984)). Under Vermont law, unjust enrichment arises where
"(1) a benefit was conferred on defendant; (2) defendant
accepted the benefit; and (3) defendant retained the benefit
under such circumstances that it would be inequitable for
defendant not to compensate plaintiff for its value." *Reed v.
Zurn*, 2010 VT 14 ¶ 11, 992 A.2d 1061, 1066 (quoting *Center v.
Mad River Corp.,* 561 A.2d 90, 93 (Vt. 1989)). In this case,
Shaffer has not demonstrated that he conferred any benefit on
Dana for which he should be compensated. In fact, as explained
above, Shaffer had no immediate right to any of the assets in
dispute. Thus, Shaffer cannot make out a claim under an unjust
enrichment theory and this claim also fails.

## V.   Daniel Kaplan's Motion for Summary Judgment

Daniel Kaplan filed a separate motion for summary judgment
to dismiss all of Shaffer's claims against him. In assessing
Daniel's motion, the Court construes all facts and make all
reasonable inferences in favor of Shaffer.

### A. Count V — Conversion

Shaffer's claim of conversion against Daniel fail for the
same reasons as the conversion claim against Dana. Shaffer

cannot demonstrate any right to possession of the allegedly converted assets.  The conversion claim against Daniel also fails for a second reason; that is, a claim of conversion requires a showing that "another has appropriated the property to that party's *own* use and beneficial enjoyment."  *P.F Jurgs & Co.*, 629 A.2d 325, 328 (Vt. 1993) (emphasis added).  Here, it is undisputed that Daniel never exercised dominion over the Trust assets.  Even assuming that Mrs. Morgan's gift to Dana amounted to conversion, the conversion claim still could not be brought against Daniel because all of the gifts were made solely to Dana, and not to Daniel.  Furthermore, at Mrs. Morgan's death, none of her assets transferred to Daniel — again, they all transferred to accounts in Dana's sole name.  Thus, Daniel never obtained ownership of any of Mrs. Morgan's funds, much less funds owned by the Trust.  As a result, Shaffer cannot show that Daniel appropriated any of Mrs. Morgan's assets to his own use and beneficial enjoyment such to sustain a conversion claim, and this claim is dismissed as a matter of law.

### B. Count VI — Unjust Enrichment

Shaffer's unjust enrichment claims against Daniel also fail for the same reasons as the unjust enrichment claims against Dana.  Not only can Shaffer not demonstrate that he suffered any specific damages as a result of Daniel's actions, but he cannot show that Daniel obtained any benefit from Shaffer that created

an implied promise to pay.  Thus, this claim is dismissed against Daniel as well.

### C. Count VII — Aiding and Abetting Breach of Fiduciary Duty

Shaffer brings a claim against Daniel for aiding and abetting in Dana Kaplan's alleged breach of her fiduciary duty to Mrs. Morgan.  As explained *supra*, to sustain a claim of aiding and abetting, the plaintiff must show "(1) a breach by the fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that the plaintiff suffered damage as a result of the breach." *Cooper*, 783 A.2d at 443.  The aiding and abetting claim therefore necessarily fails because, as noted above, Dana did not breach her fiduciary duties, and thus, Daniel cannot be liable for aiding and abetting such a breach.

Furthermore, even if Dana did breach her fiduciary duties, this claim fails because Shaffer cannot demonstrate that he suffered damages as a result of Daniel's actions.  Daniel's allegedly wrongful activities all occurred in conjunction with his role as Mrs. Morgan's Ameriprise financial advisor, and none of the Ameriprise assets were included in the Trust such that they would reach Plaintiff at Mrs. Morgan's death.  Because none of the Ameriprise assets constituted Trust assets, Shaffer cannot demonstrate that Daniel's alleged wrongdoing caused him

any harm.  There is no way to ascertain which assets — or, indeed, whether any assets — would have reached the Trust absent Daniel's involvement; thus, Shaffer cannot make a showing of specific damages against him.  Because any alleged harm is merely speculative, this claim must fail.  *See My Sister's Place v. Burlington*, 433 A.2d 275, 281 (Vt. 1981) (finding that speculative damages cannot be considered in tort actions because "compensation is provided . . . to restore a person damaged to the position he would have been in had the wrong not been committed").

### D. Counts VIII and IX — Breach of Fiduciary Duty and Professional Malpractice

Shaffer also brings claims against Daniel for breach of fiduciary duty and professional malpractice.  These claims are grounded in Daniel's role as Mrs. Morgan's financial advisor and the fiduciary relationship between Daniel and Mrs. Morgan that arose therefrom.  Shaffer contends that Daniel breached his fiduciary duty by making improper and unsuitable investments regarding Mrs. Morgan's investment accounts.  While it is undisputed that Daniel owed a fiduciary duty to Mrs. Morgan, these claims must fail because Daniel's duties are to Mrs. Morgan, not to Shaffer.  Shaffer contends that Daniel owed him a duty because he is a beneficiary of the Trust; however, this argument is unpersuasive on several bases.  It is true that

sometimes a beneficiary of a trust, even one holding only a contingent interest, may have standing to challenge the management of trust assets. *See Siegel v. JP Morgan Chase Bank*, 71 So.3d 935, 937-38 (Fla. Dist. Ct. App. 4th Dist. 2011) (applying New York law). However, in these cases, the beneficiaries have standing to bring a claim against the *trustee* for mismanagement, not third parties. Thus, to the extent Shaffer could raise claims regarding improper handling of the Trust, they would have been directed toward the Trustee (that is, Mrs. Morgan) and not Daniel.

As to claims against third parties regarding management of trust property, "the trustee is normally the appropriate person to bring (and to decide whether to bring) an action against a third party on behalf of the trust." Restatement (Third) of Trusts § 107 cmt. b (2013); *Mammola v. Mt. Washington Co-Op. Bank*, CIV.A. 13-11000-RWZ, 2014 WL 1321099, at *2 & n.5 (D. Mass. Mar. 31, 2014). In certain cases, a beneficiary may maintain a proceeding relating to the trust or its property against a third party, but only where "the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest." *Id.* This exception is not implicated here because the accounts Daniel managed at Ameriprise have long ceased to be Trust assets. Thus, Shaffer no longer has any interest, even a contingent one, in the management of the

34

Ameriprise accounts.  He is therefore unable to bring a claim against Daniel regarding his management of the Ameriprise accounts as it would not be related to the trust or its property.

Furthermore, even if Shaffer did retain an interest in the Ameriprise accounts, he still would not be able to sustain his claims because he cannot demonstrate any resulting damages, as is necessary to claims of negligence and breach of fiduciary duty.  *See Langle v. Kurkul*, 510 A.2d 1301, 1304 (Vt. 1986) (negligence action requires plaintiff to show actual loss or damage).  While Shaffer contends that Daniel's financial advice was improper, he has not alleged that Mrs. Morgan estate suffered damages as a result.  It is undisputed that Mrs. Morgan's accounts were profitable.  Any allegation that Mrs. Morgan could have made *more* profit using different advice would be entirely speculative and could not support a showing of specific damages.  Because Shaffer cannot demonstrate a duty or damages as a matter of law, his claims of breach of fiduciary duty and professional malpractice against Daniel are dismissed.

## CONCLUSION

For the reasons stated above, Shaffer's motions to strike and for partial summary judgment are **denied.**  Both Daniel and Dana Kaplan's motions for summary judgment are **granted** in full. The remaining motions are **denied** as moot.  Case dismissed.

35

Dated at Burlington, in the District of Vermont, this 15th

day of May, 2014.

/s/ William K. Sessions III
William K. Sessions III
United States District Judge